# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE WORNICK COMPANY,

Plaintiff,

vs.

HOUSTON CASUALTY COMPANY

Defendant.

CASE No. 1:11-CV-391-SJD

CHIEF JUDGE SUSAN J. DLOTT

**THE WORNICK COMPANY'S RESPONSE TO HOUSTON CASUALTY COMPANY'S STATEMENT OF PROPOSED UNDISPUTED FACTS**

Pursuant to Chief Judge Dlott's "Standing Order Governing Civil Motions for Summary Judgment," Plaintiff, The Wornick Company ("Wornick"), responds to the Proposed Undisputed Facts of Defendant, Houston Casualty Company ("HCC"), as follows:

**PROPOSED FACT NO. 1**

One of Plaintiff the Wornick Company's ("Wornick") product lines is the Meals Read to Eat ("MRE"), which it supplies to its customer, the U.S. Government and, in particular, the Department of Defense (collectively, the "U.S. Military"). (Compl. at ¶ 2; Ex. 1, at ¶¶ 4-5, 11 & 13.)

**RESPONSE TO PROPOSED FACT NO. 1**

Admitted.

**PROPOSED FACT NO. 2**

An MRE is an operational ration that includes dairy shake packets containing dry milk powder. (Compl. at ¶¶ 25-27; Ex. 1 at ¶ 5.)

**RESPONSE TO PROPOSED FACT NO. 2**

Admitted that the MREs at issue in this case consist of an operational ration that includes dairy shake packets containing dry milk powder.

**PROPOSED FACT NO. 3**

Wornick purchased dairy shake packets for its MREs from Trans-Packers Services Corp. ("Trans-Packers"). (Compl. at ¶ 25; Ex. 4 at HCC00684; *see also* Ex. 3 at ¶ 5.)

**RESPONSE TO PROPOSED FACT NO. 3**

Admitted.

**PROPOSED FACT NO. 4**

Trans-Packers, in turn, purchased dry milk powder from Franklin Farms East, Inc. ("Franklin Farms"). (Compl. at ¶¶ 25-26; Ex. 4 at HCC00684.)

**RESPONSE TO PROPOSED FACT NO. 4**

Admitted.

**PROPOSED FACT NO. 5**

Franklin Farms purchased dry milk powder from Plainview Milk Products Cooperative ("Plainview"). (Compl. at ¶¶ 26-27; Ex. 4 at HCC00684.)

**RESPONSE TO PROPOSED FACT NO. 5**

Admitted.

**PROPOSED FACT NO. 6**

Dairy shakes manufactured by Trans-Packers between 2002 and 2009 were produced under the on-sight supervision of U.S. Government inspectors. (Ex. 1 at ¶ 15; Compl. at ¶¶ 28-30.)

**RESPONSE TO PROPOSED FACT NO. 6**

Admitted only that Declaration of Lester Weiss, which the above Proposed Fact references, is a document the content of which speaks for itself.

**PROPOSED FACT NO. 7**

On or about May 28, 2009, salmonella contamination was found in Lot #9133 of dairy shake powder at Trans-Packers' facilities in New York. (Wornick Resps. to HCC's First & Second Set Interrog. & Req. Admis., attached hereto as Ex. 2, at Resp. to Interrog. No. 19.)

**RESPONSE TO PROPOSED FACT NO. 7**

Admitted.

**PROPOSED FACT NO. 8**

After the finding, the FDA commenced an investigation, testing for salmonella contamination. (Ex. 1 at ¶ 17; Compl. at ¶¶ 31-32.)

**RESPONSE TO PROPOSED FACT NO. 8**

Admitted.

**PROPOSED FACT NO. 9**

The FDA found salmonella in one other place – on manufacturing equipment at Plainview's facilities in Minnesota. (Ex. 2 at Resp. to Interrog. No. 19.)

**RESPONSE TO PROPOSED FACT NO. 9**

Admitted that the FDA found salmonella in one other place in the chain of distribution (of which Wornick is aware) – on manufacturing equipment at Plainview's facilities in Minnesota.

**PROPOSED FACT NO. 10**

After salmonella was found on its manufacturing equipment, Plainview issued a voluntary recall on June 23, 2009 for dry milk products produced at its facility since June 4, 2007 (the "Plainview Recall"). (Ex. 2 at Resp. to Interrog. No. 19; Compl. at ¶ 34.)

**RESPONSE TO PROPOSED FACT NO. 10**

Admitted that after salmonella was found on its manufacturing equipment, Plainview issued a voluntary recall on June 23, 2009, and that the recall notice is a document that speaks for itself.

**PROPOSED FACT NO. 11**

On June 25, 2009, Franklin Farms issued a recall notice and sent it to Trans-Packers, one of its customers. (Compl. at ¶ 36.)

**RESPONSE TO PROPOSED FACT NO. 11**

Admitted.

**PROPOSED FACT NO. 12**

On June 26, 2009, Trans-Packers issued a recall notice to its customers, including Wornick. (Compl. at ¶ 37.)

**RESPONSE TO PROPOSED FACT NO. 12**

Admitted.

**PROPOSED FACT NO. 13**

After the Plainview Recall, Wornick's customer, the U.S. Military, notified Wornick of its intent to invoke a breach of warranty clause in its contract with Wornick. (Compl. at ¶ 42 & Ex. G (attached to Compl.).)

**RESPONSE TO PROPOSED FACT NO. 13**

Admitted.

**PROPOSED FACT NO. 14**

The U.S. Military demanded that Wornick assume all costs for recalling, shipping, removing, replacing, and reshipping approximately 700,000 MREs (including the dairy shakes they contained), which the U.S. Military had already purchased and received from Wornick. (Compl. at ¶ 45; Ex. 4 at HCC00683); Ex. 7; *see also* Ex. 6, at ¶ 3.)

**RESPONSE TO PROPOSED FACT NO. 14**

Admitted.

**PROPOSED FACT NO. 15**

Wornick complied with this demand and "recalled and re-worked" approximately 700,000 cases of MREs. (Compl. at ¶¶ 45-46; Ex. 4 at HCC00683; Ex. 7.)

**RESPONSE TO PROPOSED FACT NO. 15**

Admitted only that Wornick complied with this demand and had shipped back to Wornick and reworked approximately 700,000 cases of MREs.

**PROPOSED FACT NO. 16**

The lots Wornick claims were "contaminated" were shipped to Wornick between 10/23/2007 and 12/02/2008 and used in the MREs from 11/13/2007 to 05/19/2009. (Ex. 4 at HCC00683-HCC00684; *see also* Compl. at ¶¶ 45-46.)

**RESPONSE TO PROPOSED FACT NO. 16**

Admitted.

**PROPOSED FACT NO. 17**

All of the dairy shakes that Wornick claims were contaminated or impaired were supplied by Trans-Packers. (Ex. 2 at Resp. to Admis. No. 21.)

**RESPONSE TO PROPOSED FACT NO. 17**

Admitted.

**PROPOSED FACT NO. 18**

A number of the dairy shakes that Wornick replaced were not a part of the Plainview Recall. (Ex. 2, Resp. to Admis. No. 24.)

**RESPONSE TO PROPOSED FACT NO. 18**

Admitted that some of the dairy shakes that Wornick replaced were not a part of the Plainview Recall. Each lot of MREs that Wornick recalled, however, contained at least one lot of recalled Dairy Shakes. There is not a one-to-one ratio between "Wornick lots" and "Trans-Packers lots."

**PROPOSED FACT NO. 19**

After the Plainview Recall, Wornick made a claim to HCC for coverage under the Policy. (Compl. ¶¶ 47-48.)

**RESPONSE TO PROPOSED FACT NO. 19**

Admitted that after the Plainview Recall, Wornick put HCC on notice of its insurance claim on or about June 24, 2009, and made a formal claim under the Policy in mid-January of 2010 after Trans-Packers failed to indemnify it and the Government insisted that it bear the costs to rework the MREs. See Ex. CC attached hereto; Ex. L at 54:19-23, 82:2-25.

**PROPOSED FACT NO. 20**

HCC denied Wornick's claim. (*See generally* Compl. at ¶¶ 47-52 & Exs. I-J (attached to Compl.).)

**RESPONSE TO PROPOSED FACT NO. 20**

Admitted.

**PROPOSED FACT NO. 21**

There have only been two findings of salmonella contamination before, during, or after the Plainview Recall: (1) the finding of Lot #9133 of dairy shake powder at Trans-Packers' facilities in New York on or about May 28, 2009; and (2) the finding on Plainview manufacturing equipment on or about June 19, 2009. (Ex. 2 at Resp. to Interrog. No. 19.)

**RESPONSE TO PROPOSED FACT NO. 21**

Denied as to the time frame "before, during, or after the Plainview Recall," which the referenced authority does not support. To the extent there was testing, admitted that there

have only been two findings of salmonella contamination in connection with the Plainview recall: (1) the finding of Lot #9133 of dairy shake powder at Trans-Packers' facilities in New York on or about May 28, 2009; and (2) the finding on Plainview manufacturing equipment on or about June 19, 2009.

**PROPOSED FACT NO. 22**

None of the dairy shake product in Lot #9133 was sold to Wornick. (Ex. 2 at Resp. to Admis. No. 15.)

**RESPONSE TO PROPOSED FACT NO. 22**

Admitted.

**PROPOSED FACT NO. 23**

None of the product that Wornick re-worked contained dairy shake product from Lot #9133. (Ex. 2 at Resp. to Admis. No. 15.)

**RESPONSE TO PROPOSED FACT NO. 23**

Admitted.

**PROPOSED FACT NO. 24**

Trans-Packers manufacturers dairy shakes for customers other than Wornick for use in MREs; consequently, Wornick is only one of Trans-Packers' customers. (Exhibit 2 at Resp. to Admis. No. 18-19; Ex. 1 at ¶ 4.)

**RESPONSE TO PROPOSED FACT NO. 24**

Admitted.

**PROPOSED FACT NO. 25**

There has been no bodily injury, sickness, disease, or death that resulted from the consumption or use of Wornick's products. (Ex. 2 at Resp. to Admis. No. 11.)

**RESPONSE TO PROPOSED FACT NO. 25**

Denied that there has been no bodily injury, sickness, disease, or death that resulted from the consumption or use of Wornick's products. (Ex. 2 at Resp. to Admis. No. 11.). Admitted that Wornick has not been made aware of any bodily injury, sickness, disease, or death that resulted from the consumption or use of Wornick's products. (Id.)

**PROPOSED FACT NO. 26**

Consumption or use of Wornick's products did not result in physical damage to (or destruction of) tangible property, including animals and/or livestock – other than to Wornick's products.

**RESPONSE TO PROPOSED FACT NO. 26**

Denied as HCC has provided no support for this proposed fact.

**PROPOSED FACT NO. 27**

Extensive, mandatory testing was performed on the dairy shakes that Wornick assembled and reworked for its customer, the U.S. Military, and none of these dairy shakes have tested positive for salmonella contamination. (Ex. 7; Ex. 8 at MT00162-MT00163, MT00166; Ex. 1 at ¶¶ 7, 15, 17-18.)

**RESPONSE TO PROPOSED FACT NO. 27**

Admitted only that the Government performed salmonella checks by production lot during the normal production process, which did not reveal salmonella. Denied as to the characterization of the testing as "extensive" and as to the implication that each of the Dairy Shakes that Wornick reworked were subject to testing during the production process or any point subsequent to their retrieval and rework.

**PROPOSED FACT NO. 28**

Hundreds of thousands of dairy shake blends have actually been consumed by U.S. military personnel during the 2-year period covered by the recall and no illnesses have been reported to date. (Ex. 1 at ¶ 18; Compl. at ¶ 43 & Ex. H (attached to Compl.) at PAGEID # 53.)

**RESPONSE TO PROPOSED FACT NO. 28**

Admitted only that the Declaration of Lester Weiss is a document that speaks for itself and that the related statement therein is based only on the declarant's "best knowledge" of the *absence* of reporting.

**PROPOSED FACT NO. 29**

Wornick asserts five sources of PUBLICITY under the policy: (1) Plainview's June 23, 2009 Product Recall, a true and accurate copy of which is attached to the Complaint as Exhibit B; (2) Franklin Farms' June 25, 2009 letter to Trans-Packers, a true and accurate copy of which is attached to the Complaint as Exhibit C; (3) Trans-Packers' June 26, 2009 Product Recall, a true and accurate copy of which is attached to the Complaint as Exhibit D; (4) ALFOODACT ("AFA") 131 (dated July 1, 2009), a true and accurate copy of which is attached to the Complaint as Exhibit F; and (5) AFA 139 (dated August 12, 2009), a true and accurate copy of which is attached to the Complaint as Exhibit H. (Ex. 2 at Resp. to Interrog. No. 18; *see also* Exs. B-D, F & H, attached to Compl.)

**RESPONSE TO PROPOSED FACT NO. 29**

Admitted that Wornick asserts the aforementioned five sources of publicity under the Policy, as well as the DLA article entitled "Operational Rations, Dairyshake Powder, Recall Information Page" updated on September 30, 2009, and attached as Exhibit I to Wornick's SOF. See also Plaintiff The Wornick's First Supplemental Responses and Objections to Defendant Houston Casualty Company's Second Set of Interrogatories and Requests for Admission, attached as Exhibit DD to this Response (identifying the possible sources of "publicity").

**PROPOSED FACT NO. 30**

A true and accurate copy of the "full claim submission" that Professional Indemnity Agency, Inc. received from Wornick's Chief Financial Officer, Dustin McDulin, on September 16, 2010 is attached hereto as Exhibit 4. (Ex. 3 at ¶ 5.)

**RESPONSE TO PROPOSED FACT NO. 30**

Admitted.

**PROPOSED FACT NO. 31**

A true and accurate copy of the "Malicious Product Tampering / Accidental Product Contamination" Policy, Policy No. H708-80163 is attached hereto as Exhibit 5. (Ex. 3 at ¶ 6.)

**RESPONSE TO PROPOSED FACT NO. 31**

Admitted.

**PROPOSED FACT NO. 32**

A true and accurate copy of the email that Wornick's Chief Financial Officer, Dustin McDulin, sent to Greg Ronquist on December 28, 2009 is attached hereto as Exhibit 7. (Ex. 6 at ¶ 3.)

**RESPONSE TO PROPOSED FACT NO. 32**

Admitted.

**PROPOSED FACT NO. 33**

A true and accurate copy of the September 4, 2009 letter from Wornick's attorney at Dinsmore & Shohl LLP that was sent to James Lecollier, Defense Logistics Agency, Defense Supply Center Philadelphia, 700 Robbins Avenue, Bldg. 6, Philadelphia, PA 19111-5092 is attached hereto as Exhibit 8. (Ex. 6 at ¶ 3.)

**RESPONSE TO PROPOSED FACT NO. 33**

Admitted.

**THE WORNICK COMPANY'S STATEMENT OF**
**DISPUTED ISSUES OF MATERIAL FACT**

As explained in its Memorandum of Law in Support of Its Motion for Partial Summary Judgment, Wornick contends that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law as to Counts I (declaratory judgment) and II (breach of contract) of its Complaint. In the alternative, and in opposition to HCC's motion for summary judgment, Wornick contends that the following issues of material fact preclude entry of summary judgment in HCC's favor:

1. Whether Wornick's MREs, including their component Dairy Shakes, were "impaired."

2. Whether Wornick's MREs, including their component Dairy Shakes, were "contaminated."

3. Whether the Dairy Shakes constitute "components" or "ingredients" of Wornick's MREs.

4. Whether ALFOODACT 131-2009 constitutes "publicity," as defined in the Policy.

5. Whether ALFOODACT 139-2009 constitutes "publicity," as defined in the Policy.

6. Whether the DLA article entitled "Operational Rations, Dairyshake Powder, Recall Information Page" and updated on September 30, 2009, constitutes "publicity," as defined in the Policy.

7. Whether Plainview's June 23, 2009 Product Recall constitutes "publicity," as defined in the Policy.

8. Whether Franklin Farms East, Inc.'s June 25, 2009 letter to Trans-Packers constitutes "publicity," as defined in the Policy.

9. Whether Trans-Packers June 26, 2009 Product Recall constitutes "publicity," as defined in the Policy.

10. Whether HCC failed to adequately investigate impairment coverage.

11. Whether HCC denied Wornick's claim without reasonable justification.

12. Whether HCC failed to apply and give meaning to the Policy's provisions.

Dated: October 19, 2012

By: /s/ Gregory A. Harrison

Gregory A. Harrison, Bar No. 0029814
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
T: 513-977-8200
F: 513-977-8141
greg.harrison@dinsmore.com

Steven J. Pudell (admitted pro hac vice)
ANDERSON KILL & OLICK, P.C.
One Gateway Center
Suite 1510
Newark, NJ 07102
T: 973-642-5858
F: 973-621-6361
spudell@andersonkill.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the below-listed trial counsel:

Kevin M. Young
Karl A. Bekeny
Jesse W. Thomas
TUCKER ELLIS & WEST LLP
925 Euclid Avenue, Suite 1150
Cleveland, OH 44115-1414

/s/ Gregory A. Harrison

Gregory A. Harrison
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
P: 513.977.8314
F: 513.977.8141