# EXHIBIT DD

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE WORNICK COMPANY, ) | CASE NO. 1:11-CV-391-SJD |
| Plaintiff, ) | CHIEF JUDGE SUSAN J. DLOTT |
| v. ) | **PLAINTIFF THE WORNICK** |
| HOUSTON CASUALTY COMPANY, ) | **COMPANY'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT HOUSTON CASUALTY** |
| Defendant. ) | **COMPANY'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR ADMISSION** |

Pursuant to Federal Rules of Civil Procedure 33 and 36, Plaintiff The Wornick Company ("Wornick"), by and through its undersigned counsel, sets forth its First Supplemental Responses and Objections to the Second Set of Interrogatories and Requests for Admission (collectively, the "Discovery Requests") of Defendant Houston Casualty Company ("HCC").

## GENERAL OBJECTIONS

The Response to each of the Discovery Requests is subject to the General Objections set forth below. Although these General Objections are stated here to avoid having to state them in each Response, one or more of said General Objections may be specifically referred to in a particular Response for the purpose of clarity.

1. Plaintiff objects to HCC's Discovery Requests, including the "Definitions" section of the Discovery Requests, to the extent they purport to impose obligations upon Plaintiff beyond the requirements of Fed. R. Civ. P. 33 or 36. Plaintiff will respond to the Discovery Requests as required by law.

2.     Plaintiff objects to each and every Discovery Request to the extent that it seeks information that is exempt from discovery and protected from disclosure pursuant to the attorney client privilege, attorney work-product doctrine, or other applicable privilege.

3.     Plaintiff objects to each and every Discovery Request to the extent that it seeks information generated in contemplation of settlement or compromise of disputed claims, or in preparation for trial pursuant to Rule 26(b)(3).

4.     Plaintiff objects to each and every Discovery Request to the extent that it is vague and ambiguous and to each and every Discovery Request that seeks to impose upon Plaintiff an unreasonable burden of inquiry, including without limitation, all of the Discovery Requests that require the identification of "all documents" relating to a certain subject matter, or otherwise are vague, ambiguous, misleading, or objectionable under the Federal Rules of Civil Procedure.

5.     Plaintiff objects to each and every Discovery Request which contains no time limitation, on the ground that the Request is overbroad, that identification of information responsive to such Request would be unduly burdensome and that such Request seeks information that is not relevant to the subject matter of this action.

6.     Plaintiff objects to each and every Discovery Request to the extent that it seeks information that is oppressive in that such information is equally accessible to HCC, is already in HCC's possession, custody or control, and/or is equally available in the public domain.

7.     Any statement herein that Plaintiff will alter, amend or otherwise supplement these Responses and provide information responsive to a particular

2

Discovery Request is not a representation that any responsive information exists or is within Plaintiff's possession, custody or control.

      8.     Plaintiff objects generally to the Discovery Requests to the extent that they utilize words or phrases that: (a) assume facts not established; (b) constitute, form, imply, require or call for a legal conclusion; (c) incorporate a characterization based upon a legal conclusion; or (d) imply a legal standard not applicable to the facts of this case. Plaintiff further objects generally to the Discovery Requests to the extent they contain incomplete, inaccurate, or misleading descriptions or characterizations of facts, events, and pleadings underlying or relating to this action. Any answer by Plaintiff does not constitute any agreement with, or acceptance of, any such assumptions, implications, conclusions, descriptions, or characterizations.

      9.     The Responses set forth herein are true and correct to the best of Plaintiff's knowledge as of this date. Thus, although a good faith effort has been made to supply pertinent information where it has been requested, the Responses contained herein are necessarily made without prejudice to Plaintiff's right to produce evidence of subsequently discovered facts, witnesses, or documents. The Responses contained herein are given without prejudice to Plaintiff's right to alter, supplement, or otherwise amend these Responses and to provide information concerning facts, witnesses, or documents omitted by these Responses as a result of newly discovered information, oversight, inadvertence, good faith error, or mistake.

      10.    Each and every objection set forth herein is specifically incorporated in response to each of the Discovery Requests.

      Plaintiff reserves its right to supplement and/or amend these objections, including

3

specific objections to the Discovery Requests.

## **RESPONSES AND OBJECTIONS TO SECOND SET OF INTERROGATORIES**

### **INTERROGATORY NO. 18:**

Identify all documents that you claim are "PUBLICITY" under the Policy.

### **RESPONSE TO INTERROGATORY 18:**

Plaintiff objects to this Interrogatory because it is overly broad and because it

seeks information already within HCC's custody, possession and control.  Subject to

and without waiving any general or specific objections, and without limitation, Plaintiff

refers HCC to the following documents:

(1)  Plainview's June 23, 2009 Product Recall and any reporting concerning such in local, regional or national media (print or web-based), including the International Dairy Foods Association reporting of said recall on its website;

(2)  Franklin Farms East, Inc.'s June 25, 2009 letter to Trans-Packers;

(3)  Trans-Packers June 26, 2009 Product Recall and any reporting concerning such in local, regional or national media (print or web-based);

(4)  ALFOODACT Do Not Consume Orders dated July 1, 2009 and August 12, 2009;

(5)  The Defense Logistics Agency website report concerning "Operational Rations, Dairyshake Powder, Recall Information Page" updated on September 30, 2009 and referenced on HCC00778; and

(6)  All documents referenced in the reports of Michael Tocicki dated January 31, 2010 and December 9, 2010.

### **INTERROGATORY NO. 19:**

Identify the location, including addresses, where salmonella bacteria has been

found in relation to the Dairy Powder Incident and list the date of each such finding.

### **RESPONSE TO INTERROGATORY 19:**

4

Plaintiff objects to this Interrogatory because it seeks information already within HCC's custody, possession and control. Subject to and without waiving any general or specific objections, Plaintiff states that salmonella bacteria was found on the manufacturing equipment at Plainview Milk Products Cooperative, 130 2nd St. SW, Plainview, Minnesota 55964-1314 on or about June 19, 2009. Plaintiff further states that salmonella bacteria was found in Lot # 9133 of Dairyshake Powder at Trans-Packers Services Corporation, 419 Vandervoort Avenue, Brooklyn, New York on or about May 28, 2009.

**INTERROGATORY NO. 20:**

For each finding of salmonella bacteria listed in response to Interrogatory No. 19, identify whether salmonella bacteria was found in or on product, equipment, or something else.

**RESPONSE TO INTERROGATORY 20:**

Plaintiff objects to this Interrogatory because it seeks information already within HCC's custody, possession and control. Subject to and without waiving any general or specific objections, Plaintiff refers HCC to Response to Interrogatory 19.

**INTERROGATORY NO. 21:**

If, in response to Interrogatory No. 20, you identify that salmonella bacteria was found in or on any equipment, describe the equipment and identify its owner.

**RESPONSE TO INTERROGATORY 21:**

Subject to and without waiving any general or specific objections, Plaintiff states that the manufacturing equipment on which salmonella bacteria was found at Plainview's Minnesota facility was presumably owned by Plainview. The salmonella

5

bacteria was found on two agglomerators at the Plainview facility. Agglomerators are used to process dry milk into instant non-fat dried milk powder.

**INTERROGATORY NO. 22:**

If, in response to Interrogatory No. 20, you identify that salmonella bacteria was found in or on any product, describe the product and identify its owner.

**RESPONSE TO INTERROGATORY 22:**

Subject to and without waiving any general or specific objections, Plaintiff states that Trans-Packers owned the Dairy Shake Blends in which salmonella bacteria was discovered, and that the Dairy Shake Blends were produced by Trans-Packers for shipment to Wornick and other Trans-Packers' customers.

**INTERROGATORY NO. 23:**

If, in response to Interrogatory No. 20, you identify that salmonella bacteria was found in or on something else, describe where salmonella bacteria was found and identify the owner.

**RESPONSE TO INTERROGATORY 23:**

Subject to and without waiving any general or specific objections, Plaintiff states that no response is necessary to Interrogatory No. 23.

**INTERROGATORY NO. 24:**

If you deny any of HCC's Second Set of Requests for Admission, explain the basis for your denial.

**RESPONSE TO INTERROGATORY 24:**

Plaintiff objects to the Interrogatory because it is overly broad, unduly burdensome, and purports to impose on Plaintiff obligations beyond those set forth in

6

Federal Rule of Civil Procedure 36. Plaintiff further objects to the Interrogatory to the extent that it seeks information that is exempt from discovery and protected from disclosure pursuant to the attorney client, attorney work product, or other applicable privilege. Subject to and without waiving any general or specific objections, Plaintiff refers HCC to Plaintiff's Responses and Objections to the Second Set of Requests for Admission.

## SECOND SET OF REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 13:

Admit that you have no evidence that any product containing salmonella bacteria was sold to Wornick by Trans-Packers.

### RESPONSE TO REQUEST FOR ADMISSION NO 13:

Wornick objects to the Request on the grounds that it contains no time limitation. Subject to and without waiving its objections, Wornick admits that it does not have knowledge of Trans-Packers having sold to Wornick any product that has tested positive for salmonella bacteria during the time period relevant to the Dairy Powder Incident. No testing was performed on the recalled Dairy Shakes as such testing would have been destructive.

### REQUEST FOR ADMISSION NO. 14:

Admit that no product that has tested positive for salmonella bacteria has been sold to Wornick by Trans-Packers.

### RESPONSE TO REQUEST FOR ADMISSION NO 14:

Wornick objects to the Request on the grounds that it contains no time limitation. Subject to and without waiving its objections, Wornick admits that it does not have

7

knowledge of Trans-Packers having sold to Wornick any product that has tested

positive for salmonella bacteria during the time period relevant to the Dairy Powder

Incident. No testing was performed on the recalled Dairy Shakes as such testing would

have been destructive.

## REQUEST FOR ADMISSION NO. 15:

Admit that the specific "Dairy Shakes" identified in Paragraph 30 of your

Complaint were not sold to Wornick.

## RESPONSE TO REQUEST FOR ADMISSION NO 15:

Wornick admits that it does not have knowledge of Trans-Packers having sold to

Wornick Dairy Shakes from Lot # 9133.

## REQUEST FOR ADMISSION NO. 16:

Admit that no product that has tested positive for salmonella bacteria was

purchased by Wornick from Trans-Packers.

## RESPONSE TO REQUEST FOR ADMISSION NO 16:

Wornick objects to the Request on the grounds that it contains no time limitation.

Subject to and without waiving its objections, Wornick admits that it does not have

knowledge of Trans-Packers having sold to Wornick any product that has tested

positive for salmonella bacteria during the time period relevant to the Dairy Powder

Incident. No testing was performed on the recalled Dairy Shakes as such testing would

have been destructive.

## REQUEST FOR ADMISSION NO. 17:

Admit that none of the products that Wornick recalled or re-worked as a result of

the Dairy Powder Incident have tested positive for salmonella bacteria.

8

**RESPONSE TO REQUEST FOR ADMISSION NO 17:**

Wornick admits that it is not aware of any positive tests for salmonella bacteria in any of the products that Wornick re-called or re-worked as a result of the Dairy Powder Incident.  No testing was performed on the recalled Dairy Shakes as such testing would have been destructive.

**REQUEST FOR ADMISSION NO. 18:**

Admit that at the time of the 2009 dairy powder recall Trans-Packers sold dairy shakes to persons other than Wornick.

**RESPONSE TO REQUEST FOR ADMISSION NO 18:**

Wornick admits that at the time of the 2009 dairy powder recall Trans-Packers sold dairy shakes to persons other than Wornick.

**REQUEST FOR ADMISSION NO. 19:**

Admit that at the time of the 2009 dairy powder recall Trans-Packers sold dairy shakes to persons other than Wornick for use in MREs.

**RESPONSE TO REQUEST FOR ADMISSION NO 19:**

Wornick admits that at the time of the 2009 dairy powder recall Trans-Packers sold dairy shakes to persons other than Wornick for use in MREs.

**REQUEST FOR ADMISSION NO. 20:**

Admit that all of the dairy shakes in the MRE's that Wornick recalled were supplied by Trans-Packers.

**RESPONSE TO REQUEST FOR ADMISSION NO 20:**

Denied.

**REQUEST FOR ADMISSION NO. 21:**

9

Admit that all of the dairy shakes that Wornick claims were "contaminat[ed]" or "impair[ed]" as defined in the Policy were supplied by Trans-Packers.

**RESPONSE TO REQUEST FOR ADMISSION NO 21:**

Wornick admits that all of the dairy shakes that were "contaminated" or "impaired" were supplied by Trans-Packers.

**REQUEST FOR ADMISSION NO. 22:**

Admit that Wornick did not purchase any dairy powder products directly from Plainview.

**RESPONSE TO REQUEST FOR ADMISSION NO 22:**

Wornick admits that it did not purchase any dairy powder products directly from Plainview.

**REQUEST FOR ADMISSION NO. 23:**

Admit that Wornick did not purchase any dairy powder products directly from Franklin Farms.

**RESPONSE TO REQUEST FOR ADMISSION NO 23:**

Wornick admits that it did not purchase any dairy powder products directly from Franklin Farms.

**REQUEST FOR ADMISSION NO. 24:**

Admit that Wornick replaced dairy shakes from Trans-Packers that were not part of the recall.

**RESPONSE TO REQUEST FOR ADMISSION NO 14:**

Admitted.

Dated: October 19, 2012

10

*Anna M. Piazza*

Steven J. Pudell
Anna M. Piazza
Anderson Kill & Olick, P.C.
One Gateway Center, Suite 1510
Newark, NJ 07102
E-Mail: spudell@andersonkill.com
apiazza@andersonkill.com

*Attorney for Plaintiff*
*The Wornick Company*

## CERTIFICATE OF SERVICE

A copy of the foregoing First Supplemental Responses and Objections to Defendant Houston Casualty Company's Second Set of Interrogatories and Requests for Admission has been served by e-mail this 19th day of October 2012, to:

Kevin M. Young
Karl A. Bekeny
Jesse W. Thomas
TUCKER ELLIS & WEST LLP
925 Euclid Avenue, Suite 1150
Cleveland, OH 44115-1414
P: 216.592.5000
F: 216.592.5009
kevin.young@tuckerellis.com
karl.bekeny@tuckerellis.com
jesse.thomas@tuckerellis.com

*Attorneys for Defendant Houston*
*Casualty Company*

Gregory A. Harrison
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
P: 513.977.8314
F: 513.977.8141
greg.harrison@dinsmore.com

*Attorneys for Plaintiff*
*The Wornick Company*

*Anna M. Piazza*

Anna M. Piazza

11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE WORNICK COMPANY,                    )       CASE NO. 1:11-CV-391-SJD
                                        )
              Plaintiff,                )
                                        )
v.                                      )       CHIEF JUDGE SUSAN J. DLOTT
                                        )
HOUSTON CASUALTY COMPANY,               )
                                        )
              Defendant.                )
                                        )
                                        )
                                        )
                                        )

## VERIFICATION

I, Dustin McDulin, Chief Financial Officer for The Wornick Company, verify that

the statements made in the foregoing First Supplemental Responses and Objections to

Defendant Houston Casualty Company's Second Set of Interrogatories are true and

correct to the best of my knowledge, information, and belief. I understand that false

statements herein are made subject to the penalties relating to unsworn falsification to

authorities.

Dated: 10/19/12