IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE WORNICK COMPANY, | ) CASE NO. 1:11-CV-391-SJD |
| Plaintiff, | ) |
| | ) CHIEF JUDGE SUSAN J. DLOTT |
| v. | ) |
| | ) **DEFENDANT HOUSTON CASUALTY** |
| HOUSTON CASUALTY COMPANY, | ) **COMPANY'S RESPONSE TO** |
| | ) **PROPOSED UNDISPUTED FACTS OF** |
| Defendant. | ) **PLAINTIFF THE WORNICK** |
| | ) **COMPANY** |

Defendant Houston Casualty Company ("HCC") responds to Plaintiff The Wornick Company's ("Wornick") Statement of Proposed Undisputed Facts as follows:

**GENERAL STATEMENT**

A. HCC responds to Wornick's "proposed undisputed facts" pursuant to Chief Judge Dlott's standing orders and procedures regarding civil motions for summary judgment. *See* Civil Procedures at I.E.II; Standing Order Governing Civil Mot. Summ. J. at A.1-3.

B. An admission with regard to Wornick's "proposed undisputed facts" means that the "proposed fact" (or the portion of the "proposed fact") such admission is responding to is currently not in dispute for purposes of Wornick's Motion for Summary Judgment. *Id.* It does not mean that the "proposed fact" is true or accurate, as much of the evidence supporting the "proposed undisputed facts" has been provided by Wornick, and has not been independently verified by HCC (nor can HCC be expected to do so, since Wornick bears the burden of establishing coverage). *Id.*

C.    A denial, in turn, is used when a "proposed undisputed fact" is incomplete, inaccurate, in dispute, or is not material. *Id.*

D.    Such admissions or denials are limited to this action and this Motion for Summary Judgment, and are subject to change should additional information be provided or discovered.

E.    Should Wornick correct, modify, or otherwise address any of its "proposed facts" in light of HCC's response, HCC reserves the right to evaluate any such "proposed fact" and to admit or deny as appropriate.

F.    This General Statement is incorporated by reference into each specific response as if fully set forth therein.

## RESPONSE TO PROPOSED UNDISPUTED FACTS

1.    Admitted that HCC sold Wornick a "Malicious Product Tampering / Accidental Product Contamination" Policy, Policy No. H708-80163 (the "Policy"). HCC states that a true and accurate copy of the Policy is attached to its Motion for Summary Judgment as Exhibit 5. (Doc. 20-3, Ex. 5.) HCC denies for lack of knowledge that a "true copy of . . . Exhibit A" is attached to Wornick's Statement of Proposed Undisputed Facts. (*See* Doc. 22-2, Ex. A.)

2.    Admitted. (Doc. 20-3, Ex. 5, Declarations.)

3.    Admitted. (Doc. 20-3, Ex. 5, Declarations.) For clarification, HCC notes that the Policy refers to "Aggregate Per LOSS" and that LOSS is a defined term under the Policy. (*Id.*; *see also id.* at Definitions.)

4.    Admitted. (Doc. 20-3, Ex. 5, Section 2, Scope of Coverage.)

5.    Denied. HCC states that the definition of "LOSS," particularly with regard to Section 2 of the Policy, is the best evidence of its content. (*See generally* Doc. 20-3, Ex. 5, Section 2, Definitions.)

6.    Denied. HCC states that the definition of "ACCIDENTAL PRODUCT CONTAMINATION" in Section 2 of the Policy is the best evidence of its content. (Doc. 20-3, Ex. 5, Section 2, Definitions.)

7.    Admitted. (Doc. 20-3, Ex. 5, Section 2, Definitions.)

C.    A denial, in turn, is used when a "proposed undisputed fact" is incomplete, inaccurate, in dispute, or is not material. *Id.*

D.    Such admissions or denials are limited to this action and this Motion for Summary Judgment, and are subject to change should additional information be provided or discovered.

E.    Should Wornick correct, modify, or otherwise address any of its "proposed facts" in light of HCC's response, HCC reserves the right to evaluate any such "proposed fact" and to admit or deny as appropriate.

F.    This General Statement is incorporated by reference into each specific response as if fully set forth therein.

## RESPONSE TO PROPOSED UNDISPUTED FACTS

1.    Admitted that HCC sold Wornick a "Malicious Product Tampering / Accidental Product Contamination" Policy, Policy No. H708-80163 (the "Policy"). HCC states that a true and accurate copy of the Policy is attached to its Motion for Summary Judgment as Exhibit 5. (Doc. 20-3, Ex. 5.) HCC denies for lack of knowledge that a "true copy of . . . Exhibit A" is attached to Wornick's Statement of Proposed Undisputed Facts. (*See* Doc. 22-2, Ex. A.)

2.    Admitted. (Doc. 20-3, Ex. 5, Declarations.)

3.    Admitted. (Doc. 20-3, Ex. 5, Declarations.) For clarification, HCC notes that the Policy refers to "Aggregate Per LOSS" and that LOSS is a defined term under the Policy. (*Id.*; *see also id.* at Definitions.)

4.    Admitted. (Doc. 20-3, Ex. 5, Section 2, Scope of Coverage.)

5.    Denied. HCC states that the definition of "LOSS," particularly with regard to Section 2 of the Policy, is the best evidence of its content. (*See generally* Doc. 20-3, Ex. 5, Section 2, Definitions.)

6.    Denied. HCC states that the definition of "ACCIDENTAL PRODUCT CONTAMINATION" in Section 2 of the Policy is the best evidence of its content. (Doc. 20-3, Ex. 5, Section 2, Definitions.)

7.    Admitted. (Doc. 20-3, Ex. 5, Section 2, Definitions.)

       8.       Admitted.  (Doc. 20-3, Ex. 5, Section 2, Definitions.)

       9.       Admitted.  (Doc. 20-3, Ex. 5, Section 2, Definitions.)

       10.       Admitted.  (Doc. 20-3, Ex. 5, Section 2, Definitions.)

       11.       Admitted that this "proposed fact" is currently not in dispute.  (Doc. 20-2, at No. 1.)  HCC specifies that, by "United States Government," Wornick is here referring to its customer, the United States Military and, in particular, the Department of Defense (collectively, the "U.S. Military").  (*Id*.)

       12.       Admitted that HCC does not currently dispute that an MRE is an operational ration that includes dairy shake packets containing dry milk powder and that Wornick purchased dairy shake packets for its MREs from Trans-Packers Services Corp.  (Doc. 20-2, at No. 2-3.)  Otherwise denied, because the evidence Wornick cites (i.e., a letter from coverage counsel Wilson, Elser, Moskowitz, Edelman & Dicker LLP ("Wilson Elser"), rather than facts from Wornick that support this "proposed fact") does not directly support or establish Wornick's assertion.  (*See* Doc. 22-15, Ex. O.)

       13.       Admitted that this "proposed fact" is currently not in dispute.  (Doc. 20-2, at Nos. 2-5.)

       14.       Denied.  Wornick has not provided information authenticating the series of documents contained in Exhibit U.  (*See* Doc. 22-21, Ex. U.)

       15.       Admitted that HCC does not currently dispute that: (1) Dairy shakes manufactured by Trans-Packers between 2002 and 2009 were produced under the on-sight supervision of U.S. Government inspectors; and (2) that extensive, mandatory testing was performed on the dairy shakes that Wornick assembled and reworked for its customer, the U.S. Military, and none of these dairy shakes have tested positive for salmonella contamination.  (Doc. 20-2, at Nos. 6, 27.)  Otherwise denied because Wornick has not provided information authenticating the series of documents contained in Exhibit U.  (*See* Doc. 22-21, Ex. U.)

       16.       Admitted that HCC does not currently dispute that on or about May 28, 2009, salmonella contamination was found in Lot #9133 of dairy shake powder at Trans-Packers' facilities in New York. (Doc. 20-2, at Nos. 7 & 21 (noting that there have only been two findings of salmonella contamination before, during, or after the Plainview Recall: (1) the finding in Lot #9133 of dairy shake powder at Trans-Packers' facilities in New York on or about May 28, 2009; and (2) the finding on Plainview manufacturing equipment on or about June 19, 2009").)  Otherwise denied because Wornick has not provided information authenticating the series of documents contained in Exhibit U.  (*See* Doc. 22-21, Ex. U.)

17. Admitted that HCC does not currently dispute that: (1) after the finding of salmonella contamination in Trans-Packers' Lot #9133, the FDA commenced an investigation, testing for salmonella contamination; and (2) that salmonella was found in one other place – on manufacturing equipment at Plainview's facilities in Minnesota. (Doc. 20-2, at Nos. 7-9 & 21 (noting that there have only been two findings of salmonella contamination before, during, or after the Plainview Recall: (1) the finding in Lot #9133 of dairy shake powder at Trans-Packers' facilities in New York on or about May 28, 2009; and (2) the finding on Plainview manufacturing equipment on or about June 19, 2009").) Otherwise denied because Wornick has not provided information authenticating the series of documents contained in Exhibit U. (*See* Doc. 22-21, Ex. U.)

18. Denied. The document Wornick has pointed to does not state that "[t]he FDA demanded that Plainview recall two-years of NFDM products . . . ." (*See* Doc. 22-21, Ex. U, at WOR-H016430 (stating that "[t]he firm committed to imitate voluntary recall . . .").) Further, Wornick has not provided information authenticating the series of documents contained in Exhibit U. (*See* Doc. 22-21, Ex. U.)

19. Admitted that HCC does not currently dispute that, on June 23, 2009, Plainview announced a voluntary recall. (Doc. 20-2, at No. 10.) Denied that a "true copy" of the "Plainview . . . recall" is "attached as Exhibit B" because Wornick has not provided information authenticating Exhibit B. (*See* Doc. 22-3, Ex. B.)

20. Admitted that this "proposed fact" is currently not in dispute. (Doc. 20-2, at No. 10.)

21. Admitted that HCC does not currently dispute that, on June 25, 2009, Franklin Farms issued a recall notice and sent it to Trans-Packers, one of its customers. (Doc. 20-2, at No. 11.) Denied that a "true copy" of the "Franklin . . . recall notice" is "attached as Exhibit C" because Wornick has not provided information authenticating Exhibit C. (*See* Doc. 22-4, Ex. C.).

22. Admitted that this "proposed fact" is currently not in dispute. (*See* Doc. 20-2, at No. 11.)

23. Admitted that HCC does not currently dispute that, on June 26, 2009, Trans-Packers issued a recall notice to its customers, including Wornick. (Doc. 20-2, at No. 12.). Denied for lack of knowledge that a "true copy" of the "Trans-Packers . . . notice of product recall" is "attached as Exhibit D" because Wornick has not provided information authenticating Exhibit D. (*See* Doc. 22-5, Ex. D.)

24. Admitted that this "proposed fact" is currently not in dispute. (*See* Doc. 20-2, at No. 12.)

      25.     Denied.  Wornick has not provided information authenticating Exhibit V.  (*See* Doc. 22-22, Ex V.)

      26.     Admitted that this "proposed fact" is currently not in dispute.

      27.     Denied.  Wornick has not provided information authenticating Exhibit V.  (*See* Doc. 22-22, Ex. V.)  The document that Wornick has attached as Exhibit V is the best evidence of its content.

      28.     Admitted that HCC does not currently dispute that, on June 26, 2009, Wornick's customer, the U.S. Military, issued ALFOODACT 130.  Denied for lack of knowledge that a "true copy" of ALFOODACT 130 is "attached as <u>Exhibit E</u>" because Wornick has not provided information authenticating Exhibit E.  (*See* Doc. 22-6, Ex. E.)

      29.     Denied.  The document that Wornick has provided as ALFOODACT 130 states, among other things, that "[t]his is a Class 1 recall."  (*See* Doc. 22-6, Ex. E.)

      30.     Admitted that this "proposed fact" is currently not in dispute.  (*See* http://www.fda.gov/safety/recalls/ucm165546.htm.)

      31.     Admitted that HCC does not currently dispute that, on July 1, 2009, Wornick's customer, the U.S. Military, issued ALFOODACT 131.  Denied for lack of knowledge that a "true copy" of ALFOODACT 131 is "attached as <u>Exhibit F</u>" because Wornick has not provided information authenticating Exhibit F.  (*See* Doc. 22-7, Ex. F.)

      32.     Admitted that this "proposed fact" is currently not in dispute.  (*See also* Doc. 20-1 at Section III.C.3.b.)

      33.     Admitted that this "proposed fact" is currently not in dispute.

      34.     Denied.  The document that Wornick has provided as ALFOODACT 131 provides information about product it describes as "potentially adulterated."  (Doc. 22-7, Ex. F.)

      35.     Denied.  This is a legal conclusion, not a "proposed fact" and, consequently, no response is required.  To the extent a response is required, ALFOODACT 131 was neither published nor a publication.  (*See* Def. Opp. Pl. Mot. Summ. J. at Section III.D.3.b.)

      36.     Denied.  This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues.  (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)  It is also incompletely presented; in context, this portion of Mr. Kidder's deposition reads as follows:

> [Q] Utilizing the policy and your understanding of the term "publicity," is this ALFOOD Act [sic] 131-2009 publicity?
>
> [A] It could be. It's not my call. I'm an underwriter, I don't know – it's not my call to make that determination. I know what the policy intent is. If there's any disagreement on these things, it's not up to me to decide that.

(*See generally* Doc. 22-14, Ex. M, at 85:19-25 & 86:1-2.)

37. Admitted that this "proposed fact" is currently not in dispute. In addition, HCC notes that the, among other things, the document Wornick cites to states that:

> Trans-Packers has not received any reports of illness related to the Dairy Shake blend. The product affected by this recall includes single-serve packets of Dairy Shake blend packaged in a preformed barrier pouch, which were distributed through Emergency Essentials, Inc. and Saratoga Trading Company located in Orem, Bluffdale and Saratoga Springs, Utah.

(Doc. 23, Ex. N, at HCC00785.)

38. Admitted that HCC does not currently dispute that, on or about July 13, 2009, Trans-Packers issued a press release. Denied for lack of knowledge that a "true copy" of "Trans-Packers . . . press release" is "attached as Exhibit W" because Wornick has not provided information authenticating Exhibit W. (*See* Doc. 22-23, Ex. W.)

39. Admitted that this "proposed fact" is currently not in dispute. In addition, HCC notes that the, among other things, the document Wornick cites to states that "[t]he product affected by this recall includes single-serve packets of Dairy Shake blend packaged in a preformed barrier pouch, which were distributed through Emergency Essentials, Inc. and Saratoga Trading Company located in Orem, Bluffdale and Saratoga Springs, Utah and D&B Specialty Foods, Inc. in Johnson City, Tennessee." (Doc. 22-23, Ex. W.)

40. Denied. Wornick has not provided information authenticating Exhibit G. (*See* Doc. 22-8, Ex. G)

41. Denied. Wornick has not provided information authenticating Exhibit G. (*See* Doc. 22-8, Ex. G.)

42. Denied. Wornick has not provided information authenticating Exhibit G. (*See* Doc. 22-8, Ex. G.) The document that Wornick has provided states, among other things, that:

> This is a notification of DSCP's intent to invoke contract clause 52.246-9P35 "Warranty of Supplies" under MRE contract SPM3S1-06-D-Z105 page 63. The

warranty clause provides in part that the contractor warrants that for six months after receipt of supplies at destination: all supplies furnished under this contract will be free from defects in material or workmanship and will conform to all requirements of this contract. DSCP is taking this action based on the FDA recall dated June 23, 2009 on dairy shake powder as the result of positive findings of Salmonella.

(*Id.*)

       43.    Denied. Wornick has not provided information authenticating Exhibit AA. HCC states that that the document Wornick has attached as Exhibit AA references "52.246-9P35 WARRANTY OF SUPPLIES (APR 2003) DSCP." (*See* Doc. 22-27, Ex. AA.)

       44.    Admitted that HCC does not currently dispute that, on August 12, 2009, Wornick's customer, the U.S. Military, issued ALFOODACT 139. Denied for lack of knowledge that a "true copy" of ALFOODACT 139 is "attached as Exhibit H" because Wornick has not provided information authenticating Exhibit H. (*See* Doc. 22-9, Ex. H.)

       45.    Denied. The document that Wornick has provided as ALFOODACT 139 states, among other things, that:

> DSCP, in conjunction with the DoD Veterinary Service Agency/Office of the Surgeon General, determined the Plainview MPC NFDM recall be expanded to include all MRE Dairyshakes assembled from 1 January 2006 to 30 June 2009 to ensure the safety of war fighters and other customers around the world. Testing and quality control protocols are stringent for operational ration components and there are no known incidents of illness from consuming the operational ration Dairyshake Powder. However, the intermittent nature of potential adulteration makes it prudent to expand the recall period and provide our war fighters and other customers with only safe and wholesome products. DSCP will rework MRE under DLA control; reworked lots will maintain the original DOP/lot number; reworked lots will have an "R" placed on the case following the original DOP/lot number.

(*See* Doc. 22-9, Ex. H.)

       46.    Denied. The document that Wornick has provided as ALFOODACT 139 states, among other things, that:

> DSCP, in conjunction with the DoD Veterinary Service Agency/Office of the Surgeon General, determined the Plainview MPC NFDM recall be expanded to include all MRE Dairyshakes assembled from 1 January 2006 to 30 June 2009 to ensure the safety of war fighters and other customers around the world. Testing and quality control protocols are stringent for operational ration components and

> there are no known incidents of illness from consuming the operational ration Dairyshake Powder. However, the intermittent nature of potential adulteration makes it prudent to expand the recall period and provide our war fighters and other customers with only safe and wholesome products. DSCP will rework MRE under DLA control; reworked lots will maintain the original DOP/lot number; reworked lots will have an "R" placed on the case following the original DOP/lot number.

(*See* Doc. 22-9, Ex. H.)

47. Admitted that this "proposed fact" is currently not in dispute.

48. Denied. This is a legal conclusion, not a "proposed fact" and, consequently, no response is required. To the extent a response is required, ALFOODACT 139 was neither published nor a publication. (*See* Def. Opp. Pl. Mot. Summ. J. at Section III.D.3.)

49. Denied. This is a legal conclusion, not a "proposed fact" and, consequently, no response is required. To the extent a response is required, ALFOODACT 131 was neither published nor a publication. (*See* Def. Opp. Pl. Mot. Summ. J. at Section III.D.3.) Further denied for lack of knowledge that a "true copy" of the September 30, 2009 DLA document is "attached as Exhibit I" because Wornick has not provided information authenticating Exhibit I. (*See* Doc. 22-10, Ex. I.)

50. Denied. The document that Wornick cites to does not describe itself as an article, or mention the word article. (*See* Ex. 22-10, Ex. I (stating "How to Use This Website" and providing information "About This Website").)

51. Denied. The document that Wornick cites to does not describe itself as an article, or mention the word article. (*See* Ex. 22-10, Ex. I (stating "How to Use This Website" and providing information "About This Website").)

52. Denied. The document that Wornick has provided, including the "Background" section, is the best evidence of its content. (*See* Doc. 22-10, Ex. I.)

53. Denied. This is a legal conclusion, not a "proposed fact" and, consequently, no response is required. To the extent a response is required, the September 30, 2009 DLA document was neither published nor a publication. (*See* Def. Opp. Pl. Mot. Summ. J. at Section III.D.3.) Further, the document that Wornick cites to does not describe itself as an article, or mention the word article. (*See* Ex. 22-10, Ex. I (stating "How to Use This Website" and providing information "About This Website").)

54. Denied. Wornick has not provided information authenticating Exhibit J. (Doc. 22-11, Ex. J.)

55. Denied. Wornick has not provided information authenticating Exhibit J. (Doc. 22-11, Ex. J.)

56. The parties' respective Motions for Summary Judgment (Doc. 20 & Doc. 22) address coverage and (with regard to HCC's Motion for Summary Judgment only) bad faith issues, but not the accuracy, nature, or extent of Wornick's alleged damages. Should this case proceed, Wornick would be required to prove its damages in light of the Policy's deductible and limits of liability. (*See* Doc. 20-3, Ex. 5, Declarations (including, among other ""Limits of Liability," $250,000 for "Rehabilitation Expenses" in addition to the $1,000,000 "Aggregate Per LOSS"); *see also, e.g.*, Doc. 23, Ex. N at PAGEID#: 616; Doc. 22-18, Ex. R, at PAGEID #: 488, 492-493.) Subject to, and without waiving this qualification (and, to the extent necessary, this denial), HCC admits that it does not currently dispute that Wornick's customer, the U.S. Military, demanded that Wornick assume all costs for recalling, shipping, removing, replacing, and reshipping approximately 700,000 MREs (including the dairy shakes they contained), which the U.S. Military had already purchased and received from Wornick. (Doc. 20-2, at No. 14.) Wornick complied with this demand and "recalled and re-worked" approximately 700,000 cases of MREs. (*Id.* at No. 15.)

57. Denied. The parties respective Motions for Summary Judgment (Doc. 20 & Doc. 22) address coverage and (with regard to HCC's Motion for Summary Judgment only) bad faith issues, but not the accuracy, nature, or extent of Wornick's alleged damages. Should this case proceed, Wornick would be required to prove its damages in light of the Policy's deductible and limits of liability. (*See* Doc. 20-3, Ex. 5, Declarations (including, among other "Limits of Liability," $250,000 for "Rehabilitation Expenses" in addition to the $1,000,000 "Aggregate Per LOSS"); *see also, e.g.*, Doc. 23, Ex. N at PAGEID#: 616; Doc. 22-18, Ex. R, at PAGEID #: 488, 492-493.) In light of this, the amount of loss, if any, that Wornick sustained is currently in dispute.

58. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

59. Admitted that this "proposed fact" is currently not in dispute.

60. Admitted that this "proposed fact" is currently not in dispute.

61. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

62. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, the deposition

testimony that Wornick cites to does not use the words "outside loss adjuster." (*See* Doc. 22-13, Ex. L, at 51:25; 52:1-2; Doc. 22-12, Ex. K, at 105:14-17, 22-23.)

63. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

64. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, the deposition testimony that Wornick cites to states that the numbers and percentages Mr. Tocicki referred to were estimates. (*See* Doc. 22-13, Ex. L, at 24:4-9; 25:3-12.)

65. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, the deposition testimony that Wornick cites to does not state that, or address whether, Tocicki adjusts the majority of claims under HCC's insurance policies. (*See* Doc. 22-13, Ex. L, at 66:14-16, 22-25.)

66. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

67. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, Tocicki never (with regard to any claim) made the ultimate decision as to whether there was coverage and, with regard to this claim, Tocicki concluded that recommending coverage was beyond the scope of his responsibility and expertise; consequently, the entire matter was referred to Wilson Elser to conduct coverage analysis. (*See, e.g.*, Doc. 22-13, Ex. L, at 89:13-24, 101:13-25, 102:1-17; Doc. 22-12, Ex. K, at 23:18-25 & 24:1-7.)

68. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, this deposition testimony that Wornick cites to does not directly support Wornick's assertion. (*See* Doc. 22-13, Ex. L, at 54:19-23.)

69. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) Admitted, however, that Tocicki conducted a thorough investigation (which included numerous meetings, discussions, and emails with Wornick and its representatives) and carefully collected and analyzed the information

submitted by Wornick and its representatives. (*See, e.g.*, Doc. 23, Ex. N.; Doc. 22-18, Ex. R.; Doc. 22-13, Ex. L, at 89-98:12.)

70. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

71. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)  In addition, Tocicki never (with regard to any claim) made the ultimate decision as to whether there was coverage and, with regard to this claim, Tocicki concluded that recommending coverage was beyond the scope of his responsibility and expertise; consequently, the entire matter was referred to Wilson Elser to conduct a coverage analysis. (*See, e.g.*, Doc. 22-13, Ex. L, at 89:13-24, 101:13-25, 102:1-17; Doc. 22-12, Ex. K, at 23:18-25 & 24:1-7.)

72. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)  In addition, Tocicki never (with regard to any claim) made the ultimate decision as to whether there was coverage and, with regard to this claim, Tocicki concluded that recommending coverage was beyond the scope of his responsibility and expertise; consequently, the entire matter was referred to Wilson Elser to conduct a coverage analysis. (*See, e.g.*, Doc. 22-13, Ex. L, at 89:13-24, 101:13-25, 102:1-17; Doc. 22-12, Ex. K, at 23:18-25 & 24:1-7.)

73. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)  In addition, any document that Wornick asserts is PUBLICITY under the Policy is the best evidence of its content.

74. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

75. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)  In addition, Tocicki never (with regard to any claim) made the ultimate decision as to whether there was coverage and, with regard to this claim, Tocicki concluded that recommending coverage was beyond the scope of his responsibility and expertise; consequently, the entire matter was referred to Wilson Elser to conduct a coverage analysis. (*See, e.g.*, Doc. 22-13, Ex. L, at 89:13-24, 101:13-25, 102:1-17; Doc. 22-12, Ex. K, at 23:18-25 & 24:1-7.)

76. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, none of the deposition testimony that Wornick cites to states that Wilson Elser was retained to "handle" Wornick's insurance claim. (*See* Doc. 22-12, Ex. K, at 23:11-13, 23-25, 24:1; Doc. 22-13, Ex. L, at 133:15-25; 134:1-14; *see also, e.g.*, Doc. 22-12, Ex. K, at 31:15-25, 32:1-6, 33:2-4 (explaining that Wilson Elser provided coverage analysis).)

77. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, the deposition testimony that Wornick cites to does not directly support Wornick's assertion. (*See* Doc. 22-13, Ex. L, at 90:20-25.)

78. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

79. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

80. Admitted that HCC denied coverage. Otherwise, denied because the remaining "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

81. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

82. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, the June 2, 2009 denial letter, which is the best evidence of its content and must be viewed in context, addressed in detail, among other things, whether there had been an ACCIDENTAL PRODUCT CONTAMINATION, a defined term under the Policy that encompasses "contamination," "impairment," and numerous other requirements that must be established before coverage will exist. (*See* Doc. 22-15, Ex. O.) The letter also stated that "this determination concerning coverage is necessarily based upon the information presently available to this office and to HCC, and is subject to change as additional facts become available" and "[i]f you have any questions or have any information which you believe may impact the foregoing, please do not hesitate to contact the undersigned." (*Id.*)

83. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, Tocicki never (with regard to any claim) made the ultimate decision as to whether there was coverage and, with regard to this claim, Tocicki concluded that recommending coverage was beyond the scope of his responsibility and expertise; consequently, the entire matter was referred to Wilson Elser to conduct a coverage analysis. (*See, e.g.*, Doc. 22-13, Ex. L, at 89:13-24, 101:13-25, 102:1-17; Doc. 22-12, Ex. K, at 23:18-25 & 24:1-7.) After this coverage analysis was conducted it was determined by HCC that there was no coverage. (*See generally* Doc. 22-15, Ex. O (noting among other things, with regard to PUBLICITY, that "**the insured did not sustain a Loss as a result of any Publicity implying an Accidental Product Contamination**" (emphasis in original)).)

84. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

85. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, the letter that Wornick references, which is the best evidence of its content and must be viewed in context, notes that Wilson Elser also participated in the conference call, that the parties discussed their "respective positions," and that the letter serves "as a response to the follow-up submission and information that you provided in correspondence dated September 9, 2010." (Doc. 22-17, Ex. Q.)

86. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

87. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, the June 24, 2010 letter states:

> Based upon our conversation, you indicated that there was [sic] additional facts and information relative to the Insured's claim. Please provide us with any documentation and information which may impact HCC's current coverage position and we will certainly review and evaluate whatever you provide to us and will respond accordingly.

(Doc. 22-16, Ex. P.)

88. Admitted that on or about September 16, 2010, Wornick provided HCC with a "full claim submission." (Doc. 20-3, Ex. 4, at PAGEID#: 195-201.) HCC states that a true and

accurate copy of the document it received is attached to its Motion for Summary Judgment as Exhibit 4. (*Id.*; *see also* Doc. 20-3, Ex. 3 at ¶ 5 & PAGEID#: 193.) HCC denies for lack of knowledge that a "true copy of . . . Exhibit T" is attached to Wornick's Statement of Proposed Undisputed Facts. (Doc. 22-2, Ex. A.)

89. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

90. Admitted that HCC denied coverage. Otherwise, denied because the remaining "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

91. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, among other things, the October 27, 2010 letter, which is the best evidence of its content and must be viewed in context, responded to Wornick's argument that "an actual contamination was found in Trans-Packers' Dairy Shake product in May 2009" and explained that there was "no evidence" that Wornick's loss "resulted from an Accidental Product Contamination." (Doc. 22-17, Ex. Q.)

92. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, the October 27, 2012 letter is the best evidence of its content and must be viewed in context. (Doc. 22-17, Ex. Q.)

93. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, among other things, the October 27, 2010 letter, which is the best evidence of its content and must be viewed in context, responded to Wornick's argument that "an actual contamination was found in Trans-Packers' Dairy Shake product in May 2009," noted that none of the information submitted by Wornick established "that any of the diary [sic] packets sold by Trans-Packers to Wornick were contaminated or impaired in any fashion" and explained that there was "no evidence" that Wornick's loss "resulted from an Accidental Product Contamination." (Doc. 22-17, Ex. Q.)

94. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, among other things, the October 27, 2010 letter, which is the best evidence of its content and must be viewed in context, addressed a December 24, 2009 article that Wornick (at that time) claimed was PUBLICITY and explained that there was "neither an accidental product contamination nor publicity implying such has occurred." (Doc. 22-17, Ex. Q.) Further, with regard to any alleged PUBLICITY under

the Policy, the denial letters repeatedly noted, among other things, that losses that did not directly result from alleged PUBLICITY are not covered under Section 2 of the Policy. (*See, e.g.*, Doc. 22-15, Ex. O; Doc. 22-17, Ex. Q.) This reasoning extends to the ALFOODACTs. (*See* Def. Opp. Pl. Mot. Summ. J. at Section III.D.1.)

95. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

96. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, the November 5, 2010 letter, which is the best evidence of its content and must be viewed in context, states, among other things, that:

> In light of the additional information and documentation provided with your September 9, 2010 correspondence, and arguments raised in recent conversations with HCC, please be advised that HCC is further investigating the Insured's claim to determine whether any such additional information impacts HCC's current coverage determination.

(Doc. 22-26, Ex. Z.)

97. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

98. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

99. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

100. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

101. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, Tocicki never (with regard to any claim) made the ultimate decision as to whether there was coverage and, with

regard to this claim, Tocicki concluded that recommending coverage was beyond the scope of his responsibility and expertise; consequently, the entire matter was referred to Wilson Elser to conduct a coverage analysis. (*See, e.g.*, Doc. 22-13, Ex. L, at 89:13-24, 101:13-25, 102:1-17; Doc. 22-12, Ex. K, at 23:18-25 & 24:1-7.)

102. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.)

103. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, Wornick states that the January 25, 2011 letter is the best evidence of its content and must be viewed in context. (Ex. 22-19, Ex. S.)

104. Denied. This "proposed undisputed fact" is not material to Wornick's Motion for Summary Judgment, which addresses coverage issues. (*See* Def. Opp. Pl. Mot. Summ. J. at Section II.B; Chief Judge Dlott's Civil Procedures at I.E.2.) In addition, among other things, the January 25, 2011 letter, which is the best evidence of its content and must be viewed in context, responded to Wornick's recent arguments and submissions. (Doc. 22-19, Ex. S.) The letter notes that "[a]t this time, HCC has concluded its review of the additional information and adheres to its prior coverage determination" that "neither an accidental product contamination nor publicity implying such has occurred" and specifically finds that "there has been absolutely no evidence or data presented demonstrating that Wornick's product was found to be contaminated or impaired pursuant to the Policy terms." (*Id.*) Further, with regard to any alleged PUBLICITY under the Policy, the denial letters repeatedly noted, among other things, that losses that did not directly result from alleged publicity are not covered under Section 2 of the Policy. (*See, e.g.*, Doc. 22-15, Ex. O; Doc. 22-17, Ex. Q.) This reasoning extends to the ALFOODACTs. (*See* Def. Opp. Pl. Mot. Summ. J. at Section III.D.1.)

105. Admitted. (Doc. 20-3, Ex. 5, Section 2, Definitions.)

106. Denied. HCC denies for lack of knowledge that a "true copy of documentation tracing retrieved MREs . . . is attached as <u>Exhibit BB</u>" because Wornick has not provided information authenticating Exhibit BB. (Doc. 22-28, Ex. BB.)

107. Denied. Wornick has admitted that a number of the dairy shakes that Wornick replaced were not a part of the Plainview Recall. (Doc. 20-3, Ex. 2, Resp. to Admis. No. 24; *see also* Doc. 22-18, Ex. R, at PAGEID#: 492 ("[C]ertain [a "significant quantity"] reworked/rehabilitated dairyshake **were not** listed in the Trans-Packers recall notice. These are highlighted with a purple dot." (emphasis in original)); *id.* at PAGEID#: 521-525 (document illustrating (via highlighted dots) reworked/rehabilitated dairyshake that was not listed in the Trans-Packers recall notice)).)

16

## **DISPUTED ISSUES OF MATERIAL FACT**

1. The parties' respective Motions for Summary Judgment (Doc. 20 & Doc. 22) address coverage and (with regard to HCC's Motion for Summary Judgment only) bad faith issues, but not the accuracy, nature, or extent of Wornick's alleged damages. Should this case proceed, Wornick would be required to prove its damages in light of the Policy's deductible and limits of liability. (*See* Doc. 20-3, Ex. 5, Declarations (including, among other "Limits of Liability," $250,000 for "Rehabilitation Expenses" in addition to the $1,000,000 "Aggregate Per LOSS"); *see also, e.g.*, Doc. 23, Ex. N at PAGEID#: 616; Doc. 22-18, Doc. 22-18, Ex. R, at PAGEID #: 488, 492-493.) In light of this, the amount of loss, if any, that Wornick sustained is currently in dispute.

Respectfully submitted,

*s/Kevin M. Young*
Kevin M. Young (0029715)
Karl A. Bekeny (0075332)
Jesse W. Thomas (0085253)
TUCKER ELLIS LLP
925 Euclid Avenue, Suite 1150
Cleveland, OH 44115-1414
Telephone:   216.592.5000
Facsimile:   216.592.5009
kevin.young@tuckerellis.com
karl.bekeny@tuckerellis.com
jesse.thomas@tuckerellis.com

*Attorneys for Defendant*
*Houston Casualty Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2012, a copy of **Defendant Houston Casualty Company's Response to Proposed Undisputed Facts of Plaintiff The Wornick Company** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

          Respectfully submitted,

          *s/Kevin M. Young*
          Kevin M. Young (0029715)
          Karl A. Bekeny (0075332)
          Jesse W. Thomas (0085253)
          TUCKER ELLIS LLP
          925 Euclid Avenue, Suite 1150
          Cleveland, OH 44115-1414
          Telephone:    216.592.5000
          Facsimile:    216.592.5009
                        kevin.young@tuckerellis.com
                        karl.bekeny@tuckerellis.com
                        jesse.thomas@tuckerellis.com

          *Attorneys for Defendant*
          *Houston Casualty Company*